FILED
IN CLERKS OFFICE

2024 JUL 12 AM 11: 33

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

VINCENT LAWRENCE,

    Plaintiff,

v.

KALM FINANCIAL INC. ET AL

    Defendant.

Civil Action No. 1:24-cv-11493- ADB

# PLAINTIFF MEMORANDUM SUPPORTING THEIR MOTION FOR LEAVE TO FILE SECOND VERIFIED AMENDED COMPLAINT AND OPPOSITION TO DEFENDANTS TURBO MOTION TO DISMISS

1. Plaintiffs Vincent Lawrence ("Plaintiff") hereby submit my Motion for an order denying defendant Turbos motion to dismiss as to plaintiff failed to state a claim under the TCPA, MTSA, MGL 93s and injunctive relief and granting Plaintiffs leave to file their Second Amended Complaint ("SVAC") against Defendants Turbo Debt LLC ("Turbo").

2. Defendant Turbo and Plaintiff agreed that this motion would be filed today July 12, 2024, while we try to settle the case between the parties as of today I have not heard back from defendant Turbo regarding any settlement at all, this motion was ready to file on July 5, 2024, but was withheld from being filed until today.

1

3. Plaintiff sent defendant a copy on or about Monday July 8, 2024, and now files this motion with the court and ask for leave to Amend to file the Second Amended Complaint.

## STANDARD OF REVIEW

4. On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## Defendants 12(b)(6) Motion to Dismiss

5. The Defendant Turbo state in their motion to dismiss "Complaint warrants dismissal as it presents only vague and imprecise allegations that fall dramatically short of the pleading standards set forth in the Federal Rules of Civil Procedure. Most egregiously, Plaintiff's pleadings fail to give Turbo Debt adequate notice of the claims against it, because **every** allegation levied against Turbo Debt only refers vaguely to amorphous "Defendants"

2

without specifying which of the purportedly unlawful calls were allegedly made by Turbo Debt—a particularly critical error, given that the number of violations has direct implications for the calculation of damages under the TCPA and MTSA. The Complaint is further grossly deficient because it neglects to allege **any** facts that connect Defendant to the alleged violations. Indeed, even a thorough review of the Complaint yields absolutely no insight as to why Plaintiff believes Turbo Debt is at all connected to any of the alleged violative calls at issue, let alone responsible for their placement. Accordingly, this Court should enter an Order dismissing Plaintiff's Complaint as it relates to Turbo Debt". See Turbo Motion to dismiss Document 17 ¶ pg. 2.

6. Defendant states additionally, pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court should dismiss a complaint that fails to state a claim upon which relief may be granted. See Turbo Motion to dismiss Document 17 ¶ pg. 6-9.

7. "To survive dismissal, 'the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id., 53 F.3d at 5-6 (quoting Barchock, 886 F.3d at 48 (internal quotation marks omitted)). See Paul Jones v Montachusetts Regional Transit Authority First Circuit November 30, 2023, case # 22-1234. Page 5.

8. Here, plaintiff alleged violations of the TCPA in the form of unconsented-to cell phone calls made using an ATDS or artificial or prerecorded voice.[1] As relevant here, the TCPA prohibits "any person" from using an "[ATDS] or an artificial or prerecorded voice" to

---

[1] The TCPA defines an ATDS as a piece of "equipment which has the capacity -- (A) to store or produce telephone numbers to be called using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §227(a)(1). See Paul Jones v Montachusetts Regional Transit Authority First Circuit November 30, 2023, case # 22-1234.

make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). See Paul Jones v Montachusetts Regional Transit Authority First Circuit November 30, 2023, case # 22-1234. Page 5.

9. However, the prohibition on autodialed and prerecorded/artificial voice message calls to cellular phones is not limited to "telephone solicitations"; as noted, it applies to "any call" and by its terms exempts only calls made for emergency purposes and calls made with the prior express consent of the called party. See 47 U.S.C. § 227(b)(1)(A)(iii); In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 8022-23 (2015) (noting that "the TCPA contains unique protections for wireless consumers because autodialed and prerecorded calls are increasingly intrusive in the wireless context, . . . [and] the intrusion on the consumer's privacy from unwanted calls may actually be greater with wireless than wireline calls, where the calls are received on a phone that the consumer may carry at all times" (internal quotation marks omitted)). See Paul Jones v Montachusetts Regional Transit Authority First Circuit November 30, 2023, case # 22-1234. Pg. 5.

10. The elements of a TCPA claim (47 U.S.C. § 227(b)(1)(A)(iii)) are: (1) the defendant used an automatic dialing system or an artificial or prerecorded voice, (2) to call a telephone number assigned to a cellular telephone service or to a service for which the called party is charged for the call. See Levy v. Receivables Performance Mgmt. LLC 972 F. Supp. 2d 409, 417 (E.D.N.Y. 2013). Also See Breda v. Cellco P'ship, 934 F.3d 1, 4 (1st Cir. 2019).

See also Paul Jones v Montachusetts Regional Transit Authority First Circuit November 30, 2023, case # 22-1234. Pg. 6.

11. Plaintiff clearly stated all the elements needed for a TCPA claim as the First circuit and other circuits has laid out as recent as November 30, 2023. See Levy v. Receivables Performance Mgmt. LLC 972 F. Supp. 2d 409, 417 (E.D.N.Y. 2013). Also See Breda v. Cellco P'ship, 934 F.3d 1, 4 (1st Cir. 2019). See also Paul Jones v Montachusetts Regional Transit Authority First Circuit November 30, 2023, case # 22-1234. Pg. 6.

12. Plaintiff also stated defendants Turbo in the FAVC See stated that Defendants Turbo called his cell phone without an emergency purpose and with an ATDS. See FVAC ¶¶ 22-23, 56, 59, 65,

13. Plaintiff also stated in the FAVC that "Defendant Cross called my cellular telephone more than one or two times within a 12 month period" . See ¶ FVAC 51.

14. Plaintiff also described the reason for defendants Turbos calls "stated that Defendants Kalm, Turbo called me to sell me debt settlements services". See ¶ FVAC 40.

15. Plaintiff also described how the calls were called with an ATDS with particularity not just bare bones. Plaintiff stated "When plaintiff answered these calls he would here a pause and then a click and then the robo messages would start or a live agent would come on the phone and it sounded like they were in a call center".  See  FVAC ¶ 35.

16. Plaintiff also stated that defendants call a cellular telephone that was registered on the DNC, I stated the date and time I registered with the national and state registries. See FVAC ¶¶16-24.

17. In this case, there is no genuine dispute as to the first, second or third element of what needs to be alleged in a TCPA complaint according to the First Circuit Court of appeals

5

and this district, the plaintiff has put forward sufficient evidence on all three element in his FVAC to alleged a violation of the TCPA, defendants motion to dismiss should be denied and plaintiff should be given leave to amend his complaint that is attached to this motion. See Carl v. First Nat'l Bank of Omaha, No. 2:19-cv-00504-GZS, at *15 (D. Me. June 15, 2021).

18. Defendants do not state plaintiff failed to state a claim under the Massachusetts Unfair Deceptive Trade Practices Act G.L.c 93A, knowingly and willfully have violated the MTSA, DNC provisions, falsified and displaced caller identification, in violation of M.G.L., c. 159C, § 4 (and 201 C.M.R. § 12.02(5), failed to register with the Massachusetts Office of Consumers affairs and Business Regulation (the "Office") in violation of 201 C.M.R., § 12.04. or the injunction requiring Defendants to comply with 47 U.S.C. § 227(b)(3), (c) (5). 201 C.M.R., § 12.04(3), MGL 93A, 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list (4) To make any more calls or text messages without Consent. See Defendants Motion to dismiss

19. Consistent with First Circuit Law, Plaintiffs Move to Amend Before—Rather Than After—the Court Considers the Arguments in the Motion to Dismiss.

20. Plaintiff filed his First Amended Verified Complaint ("Complaint") in the Suffolk County Superior Court of Massachusetts state court on or about May 3, 2024, Plaintiff alleged that at least Three (3) different entities purportedly committed violations of the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. § 227 et seq., the Massachusetts Telemarketing Solicitation Act ("MTSA") under M.G.L. c. 159C et seq., the Massachusetts Consumer Protection Law under M.G.L. c. 93A, and regulations

pertaining to the Massachusetts Do Not Call Registry as codified in 201 CMR 12.04. by calling my personal cellular telephone with an emergency purpose , with an Automatic Telephone Dialing System ("ATDS") for solicitation telemarketing purposes while plaintiff telephone was on the Do No9t Call Registry more than 31 days more than twice within a twelve month period.

21. Turbo Debt removed the action to the United States District Court for the District of Massachusetts on June 7, 2024, on the basis of federal question jurisdiction afforded by the federal claims brought under the TCPA.

22. Plaintiffs strongly believe the SVAC is entirely sufficient to resisting the challenge in the motion to dismiss and to upgrade the complaint from a State court complaint to a federal complaint.

23. After reviewing the motion to dismiss, Plaintiffs have determined that amending certain allegations would clarify the record for the Court's decision on the arguments raised in the defendant Turbo motion to dismiss. Plaintiffs move to amend before testing the various arguments in Defendants' motion to dismiss.

24. On This Record, Rule 15 Requires Leave to Amend A party amending under Rule 15(a)(2) may do so "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Defendants here have declined to consent to Plaintiffs amending their complaint. The Supreme Court's admonished that Rule 15 favors and presumes amendment:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. . . . In the absence of any

7

apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

Foman v. Davis, 371 U.S. 178, 182 (1962). Consistent with this admonition, amendment under Rule 15(a)(2) is a matter of the Court's discretion, but the scope of that discretion is limited.[2] "Leave to amend under Rule 15 'is freely given when justice so requires' absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive." Guest-Tek Interactive Entm't Inc. v. Pullen, 731 F. Supp. 2d 80, 92-93 (D. Mass. 2010) (citing, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962)). And the First Circuit "will not affirm [such] denial unless there appears to be an adequate reason for the denial . . ." Carmona v. Toledo, 215 F.3d 124, 136 (1st Cir. 2000) (citation omitted).[3] As set forth below, none of the factors identified out in Foman provides an adequate basis to deny Plaintiffs leave to file their second amended complaint.

**There Is No Prejudice or Undue Delay**

---

[2] "The policy of Rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the trial court's discretion; thus unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." Benitez-Allende v. Alcan Aluminio do Brasil, S.A., 857 F. 2d 26, 36 (1st Cir. 1988) (citations, punctuation omitted)

[3] "Unless there appears to be an adequate reason for the denial of leave to amend (e.g., undue delay, bad faith, dilatory motive, futility of amendment, prejudice), we will not affirm it." Glassman v. Computervision Corp., 90 F.3d 617, 622 (1st Cir. 1996) (citation omitted).

25. When Plaintiffs asked, Defendants would not provide any basis for not granting the Plaintiffs' proposed amendment or if it would cause prejudice or undue delay, plaintiff attempted to meet and confer to narrow the issue but defendants have not responded, it would be disingenuous for Defendants to now claim prejudice or undue delay now.

26. Prejudice is "the most frequent reason for denying leave to amend." Picker Int'l, Inc. v. Leavitt, 128 F.R.D. 3, 6 (D. Mass. 1989). Defendants bear the burden of proving prejudice on this Motion: "the burden is upon the opposing party to assert and demonstrate that it will be substantially prejudiced by the proposed amendment and its mere statement that prejudice will result if the amendment is allowed is not sufficient reason for denying leave to amend." Pendley v. Komori Printing Mach. Co., No. 89-0420, 1990 WL 17152, *3 (D.R.I. Feb. 8, 1990) (citing Hageman v. Signal L.P. Gas, Inc., 486 F.2d 479, 484 (6th Cir.1973)). See also Stock Food Am., Inc. v. Pearson Educ., Inc., No. 12- 124, 2012 WL 5986791, *9 (D. Me. Nov. 29, 2012) (citing Taliaferro v. City of Kansas City, 128 F.R.D. 675, 678 (D. Kan.1989) for proposition that "party opposing amendment has the burden of showing prejudice").[4]

27. Defendants have no evidence of cognizable prejudice. Prejudice typically "takes the form of additional, prolonged discovery and a postponement of trial," as well as belated, significant changes to the issues material to litigation. Klunder v. Brown Univ., 778 F.3d 24, 34 (1st Cir. 2015).4 This case is at an early stage: trial and class certification are not on the horizon, the amendments mostly provide more detailed allegations, and the parties

---

[4] See Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. Cal., 648 F.2d 1252, 1254 (9th Cir. 1981) ("[b]ald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a)"); Taliaferro, 128 F.R.D. at 678 (citing Beeck v. Aquaslide 'N' Dive Corp., 562 F.2d 537, 540 (8th Cir. 1977) for proposition that "party opposing the amendment of the pleadings has the burden of showing prejudice").

have not started nor has it been a 26 f conference and only one defendant has answered the complaint at this stage Indeed, there are no case management deadlines yet, and the amendments do not change the discovery needed. See Santiago v. WHM Carib, LLC, 126 F. Supp. 3d 211, 214 (D.P.R. 2015) (no prejudice where amendment filed within case management order to amend, within eight months of litigation commencing, proposed amendments did not "substantially change" claims but "merely augment[ed]" them); Greenberg v. Mynczywor, 667 F. Supp. 901, 905 (D.N.H. 1987) ("defendants will suffer no prejudice by the granting of leave to amend because the amendments here sought raise no new issues").

28. The fact that the second amended complaint sharpens Plaintiffs' arguments against Turbos motion to dismiss does not constitute prejudice.[5] Nor does prejudice cover the lost value of prior litigation work caused by amendment; prejudice under Rule 15 only cover the cost of litigation work that the amendment may require in the future.7 Prior proceedings—including Defendants' prior motion to dismiss the original complaint— do not amount to future prejudice. Nor does prejudice cover the lost value of prior litigation work caused by amendment; prejudice under Rule 15 only cover the cost of litigation work that the amendment may require in the future.[6] Prior proceedings—including

---

[5] See O'Leary v. New Hampshire Boring, Inc., 323 F.R.D. 122, 128 (D. Mass. 2018) (fact that amendment would require "proposed defendants . . . to actively litigate the case . . . is not prejudice"); In re Osage Expl. Co., 104 F.R.D. 45, 49 (S.D.N.Y. 1984) ("fact that [amendment] might increase defendants' exposure to potential liability was not the type of prejudice that warranted denial of leave to amend the complaint"; citations omitted). See also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1487 (3d ed. 2018) (courts should not deny "otherwise proper complaint simply because that amendment may increase defendant's potential liability").

[6] See A.J. Props., LLC v. Stanley Black & Decker, Inc., No. 11-10835, 2013 WL 4046329, *2 (D. Mass. Aug. 7, 2013) (rejecting argument that amendment would prejudice plaintiff by "nullify[ing] the time and money spent over the past year and a half," because court could not

Defendants' prior motion to dismiss the original complaint— do not amount to future prejudice.

29. In the First Circuit, the analyses for prejudice and undue delay overlap. See Weber v. Sanborn, 526 F. Supp. 2d 135, 142, 143 (D. Mass. 2007) ("facts of each case determine whether undue delay is sufficiently prejudicial . . . to warrant a denial of leave to amend"). Hence, "the longer a party delays in bringing an amendment, the less prejudice an opposing party must show to justify denying leave to amend." Id. at 143 (First Circuit cases affirming denial of amendment for undue delay "generally involve the prospect of additional discovery or other significant burden on the non-moving party"; collecting cases).8 At some point, the passage of time becomes "undue delay" and shifts the burden to the movant. See Greenberg v. Mynczywor, 667 F. Supp 901, 905 (D.N.H. 1987) ("if considerable delay has occurred, the burden shifts to the movant to show a valid reason for the Court to excuse the delay").[7]

30. Plaintiffs seek to amend a little over a few days after the start of the case after Defendant Turbo removed this case from the Suffolk Superior Court to this Federal court on June 7, 2024, and then Turbo filed their Motion to dismiss on 06/28/24 which was less than

---

"see how it unfairly prejudices plaintiff going forward"); Lemieux v. City of Holyoke, 641 F. Supp. 2d 60, 63 (D. Mass. 2009) (only prejudice cognizable under Rule 15 is "prospective," not "retroactive"; fact that plaintiffs would not have agreed to enter into prior settlement negotiations if they had known about amendment did not weigh against amendment under Rule 15).

[7] See also Tiernan v. Blyth, Eastman, Dillon & Co., 719 F.2d 1, 4 (1st Cir. 1983) (affirming denial of amendment for undue delay shortly before trial where additional claims "may well have affected defendants' planned trial strategy and tactics"); Pacamor Bearings, 892 F. Supp. at 354 ("'[t]he further along a case is toward trial, the greater the threat of prejudice and delay when new claims are belatedly added'"; quoting Exec. Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 71 (1st Cir. 1995)).

11

Eighth days ago. Plaintiffs have been diligent with respect to the proposed amendment. Defendants did not disclose the arguments in the motion dismiss until one day before they filed it on 06/27/24, Plaintiff seeks to amend as soon as I reasonably could do so which is Friday July 5, 2024 , in light of Defendants' motion to dismiss. (ECF Nos. 16, 17.) Plaintiff has been diligent with respect to the proposed amendment. This is not undue delay.

### There Is No Repeated Failure to Cure by Prior Amendments or Bad Faith

31. There is no repeated failure to cure deficiencies in Plaintiffs' complaint, or bad faith. Plaintiffs have not sought leave to amend before, they filed the FAC "as a matter of course" under Rule 15(a)(1): thus, there could be no "repeated failure to cure deficiencies by amendments previously allowed." *Foman*, 371 U.S. at 182. (*Cf.* ECF No. 34 *with Perlmutter v. Shatzer*, 102 F.R.D. 245, 248 (D. Mass. 1984) (where party never requested leave to amend and therefore never "had the opportunity to previously 'fail to cure' any deficiencies," factor did not weigh against amendment)).) A single prior amendment does not justify refusal to amend here.[8]

32. Likewise, there are **NO** repeated failure to cure deficiencies. Plaintiffs' FAC (let alone the SVAC) could not have been subject to dismissal on this ground, after the addition of Turbo. See Montalvo-Huertas v. Rivera-Cruz, 885 F.2d 971, 976 (1st Cir. 1989). "plaintiffs have a shared stake in the litigation . . . the finding that one has standing to sue renders it superfluous to adjudicate the other plaintiffs' standing."

---

[8] Cf. United States ex rel. D'Agostino v. EV3, Inc., 802 F.3d 188, 194-195 (1st Cir. 2015) ("number and nature of prior amendments to a complaint" are relevant to leave to amend; citation omitted); Nikitine v. Wilmington Tr. Co., 715 F.3d 388, 390 (1st Cir. 2013) ("prior opportunity to amend is one data point to be taken into account [and] does not have a talismanic significance").

33. Plaintiffs efforts to clarify the record prior to adjudication of Defendants' motion reflect good faith compliance with prevailing First Circuit law. Filing an amended complaint as "an attempt to forestall ruling on a [dispositive] motion . . . may evidence bad faith," but there are no grounds for such inference where the plaintiff "merely attempt[s] to cure [a] prior deficiency" in a claim made before the dispositive motion. Savoy v. White, 139 F.R.D. 265, 269 (D. Mass. 1991).

### The Proposed SVAC Is Not Futile

34. Finally, the proposed SVAC is not futile. Futility tests whether a proposed amended "complaint failed to meet the pleading standards of Rule 12(b)(6). There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim." Glassman v. Computer vision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (review for futility "applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion").

35. Plaintiffs met and conferred with Defendants about narrowing the scope of the arguments on this motion in light of the changes in the SVAC, but Defendants have declined to do so. (Preston Decl. ¶ 4.) Hence, Plaintiffs address all of the arguments in Defendants' motion to dismiss below.

### CONCLUSION

36. Wherefore plaintiff ask this court to deny defendants motion to dismiss on the grounds that plaintiffs has stated a claim under the TCPA, MTSA, MGL 93a and Injunctive relief, and grant plaintiffs first request for leave to amend the complaint and to allow plaintiff to file his Second Amended Complaint attached to this pleading.

Respectfully Submitted                                          July 11, 2024

*Vincent Lawrence*

Vincent Lawrence    /s/ Vincent Lawrence

111 Atlantic Avenue, Apt. 208

Boston, MA 02110

857-225-3862

vlawrence02121@gmail.com

## CERTIFICATE OF SERVICE

I Vincent Lawrence the Plaintiff hereby certify, under the penalties of perjury, that on this date I have made service of a copy of the following document(s) to the defendants attorneys listed below by email and first class mail.

Vincent Lawrence    /s/ Vincent Lawrence

111 Atlantic Avenue, Apt. 208

Boston, MA 02110

857-225-3862

vlawrence02121@gmail.com


Kenneth B. Walton

Lewis Brisbois Bisgaard & Smith LLP

One International Place

Suite 350

Boston, MA 02110

857-313-3936

Email: ken.walton@lewisbrisbois.com


Pierre C. Youssef

Lewis Brisbois Bisgaard & Smith

One International Place

Boston, MA 02110

508-816-3396

Email: peteryoussef1994@hotmail.com


Jamey R. Campellone

Greenspoon Marder LLP

200 East Broward Boulevard

Suite 1800

Fort Lauderdale, FL 33301

(954) 527-6296

Email: jamey.campellone@gmlaw.com

Melanie A. Conroy

Pierce Atwood LLP

100 Summer Street

Suite 2250

Boston, MA 02110

617-488-8119

Email: mconroy@pierceatwood.com